ALVAH W. BROWN, Respondent, v. JAMES A.
WORTHINGTON, Appellant.

Springfield Court of Appeals, January 3, 1911.

1. **DURESS: Contracts: Ratification of Transaction: Payment of Note Given Under Duress.** Defendant contracted to sell plaintiff an option on several hundred head of hogs at a certain price, but when plaintiff came for the hogs defendant refused to deliver possession unless he received $1500 more than the contract called for. Plaintiff had already contracted the hogs to another party and claimed that he was forced to pay the additional $1500 in order to get the hogs and fulfill his contract with the other party, and that he therefore made the additional payment under duress, and this suit was for its recovery. It appeared that plaintiff gave defendant his check for $500 and note for $1000, due in thirty days, and subsequently paid these without protest while defendant was still the owner. *Held*, that it was not necessary to decide whether plaintiff gave the note and check under duress, for as he subsequently paid them when the duress did not exist, and when he might have resisted payment under said plea, he thus acknowledged the genuineness of the obligation and ratified the transaction.

2. ———: ———: **Contracts.** While a party may recover back money paid under such circumstances as constitute duress, yet it is also true that a contract secured by duress is not void but is voidable only, and may be rendered valid by the subsequent ratification, and this being true a party may ratify the same after passing from under the influence which amounted to duress; so if he afterwards treats it as a valid contract he thus precludes himself from subsequently avoiding it.

Appeal from St. Louis Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

REVERSED.

*Selden P. Spencer, F. C. Donnell* for appellant.

(1) The petition does not allege nor the evidence prove that at the time the note and check were given, or at the time they were paid, the facts were such as

to constitute duress, and consequently, even if it be held that defendant was not entitled to the alleged excess payment, the plaintiff, who paid his money with full knowledge of the facts, is not entitled to recover the payment made to defendant. The general rule forbids recovery. 30 Cyc. 1311; Buchanan v. Sahlein, 9 Mo. App. 552; Glass Co. v. Boston, 4 Metc. (Mass.) 181; Parker v. Lancaster, 84 Me. 512; Wood v. Telephone Co., 223 Mo. 537. (2) The petition fails to allege that duress existed when the note and check were paid, and the allegations of prior compulsion, fail to remedy its fatal weakness, for prior compulsion not continued to the date of payment gives no right of recovery. 22 Am. and Eng. Ency. Law, 614; Fellows v. School District, 39 Maine 559; Cunningham v. Boston, 15 Gray (Mass.) 468; Teem v. Ellijay, 89 Ga. 154. (3) Meaning of duress. Wolfe v. Marshall, 52 Mo. 167. (4) The only instances where recovery on ground of duress has been permitted, do not include such cases as the one at bar. 35 Cyc. 27; American Brewing Co. v. St. Louis, 187 Mo. 367; Hackley v. Headley, 45 Mich. 569; Armstrong v. Latimer, 165 Pa. St. 398. (5) Refusal to perform contract does not constitute duress. 9 Cyc. 448; Tucker v. State, 72 Ind. 245; Silliman v. United States, 101 U. S. 465. (6) No showing that Brown did not have adequate legal remedy. Benjamin on Sales (5 Ed.), 578; 2 Schouler on Personal Property (3 Ed.), secs. 284, 286; 6 Am. and Eng. Ency. Law 467.

*R. L. Shackelford* and *J. C. Kiskaddon* for respondent.

(1) Where one is compelled, for the purpose of meeting a pressing and imminent emergency, to pay for what he ought not to pay or become liable to suffer loss, then such payment is not voluntary, and he can recover the amount thus paid. Font v. Geraldin, 64

Mo. App. 165; Niedermeyer v. Curators, 61 Mo. App. 654; Wells v. Adams, 88 Mo. App. 224; Westlake v. St. Louis, 77 Mo. 50; Kerrigan v. Kelly, 17 Mo. 275; Quinnette v. Washington, 10 Mo. 56; Wilkerson v. Hood, 65 Mo. App. 491; Lappin v. Crawford, 186 Mo. 469; Tandy v. Com. Co., 113 Mo. App. 419; Warrensburg v. Moeller, 77 Mo. 63; Douglas v. Kansas City, 147 Mo. 428; Brewing Co. v. St. Louis, 187 Mo. 367; State v. Slayback, 90 Mo. App. 303; Construction Co. v. Hays, 191 Mo. 301; Railroad v. Patterson, 41 Ind. 312; Spaids v. Barrets, 57 Ill. 293; 30 Cyc. 1303; Glass Co. v. Boston, 4 Metc. (Mass.) 181; Lingenfelder v. Brewery Co., 103 Mo. 594. (2) And it makes no difference even if the moral duress arises out of a breach of contract, if the necessity of the person paying is pressing and imminent. Niedermeyer v. Curators, 61 Mo. App. 654; Wells v. Adams, 88 Mo. App. 215. (3) And it is no answer to an allegation of compulsory payment that the party has another remedy. Wilkinson v. Hand, 65 Mo. App. 494; Wells v. Adams, 88 Mo. App. 225; Peysor v. Mayne, 70 N. Y. 497.

COX, J.—Action to recover money claimed to have been paid by plaintiff to defendant under duress. Trial by jury, verdict for plaintiff for fifteen hundred dollars and defendant has appealed.

The facts out of which this litigation grew are as follows: Defendant, James A. Worthington, was president of the Worthington Live Stock Company, a company engaged in the feeding of hogs on Chesley Island in the Mississippi river near the city of Saint Louis. In July, 1907, they had on this island a large number of hogs, and plaintiff, who is a resident of Grand Rapids, Michigan, being desirous of purchasing hogs, visited Saint Louis on July 19, 1907, and upon that date secured from defendant Worthington what is called

an option for the purchase of the hogs on Chesley Island as follows:

"CHESLEY PARK, Mo., 7|10|07

"I hereby offer for sale to A. W. Brown, of Grand Rapids, Mich., all of my hogs on Chesley Island, with the exception of all spring and summer pigs of this year, and also with the exception of four crippled or barren hogs to be selected by me, the count of hogs sold not to be less than twelve hundred and fifty hogs, for the amount of eighteen thousand five hundred dollars, cash or drafts cashable.

"I will sell the same lot of hogs to you for twenty-one thousand six hundred dollars on time, providing you pay one-third cash and give bankable approved notes for the balance on six months' time.

"You may have this option for thirty days.

"Unless you take hogs within ten days, you must pay me ten dollars per day for each day I keep hogs thereafter, providing you accept of this proposition within the thirty days, said charge for keeping to be in proportion with the number you leave here after ten days.

"You must leave sows now nursing until their pigs are eight weeks old.

"Sows to be held back to be shipped later.

"All expense of shipping to be borne by purchaser. I will help load on boat.

"Notes must be saleable. Holding to be subject to unforeseen contingencies.

"J. A. WORTHINGTON."

Plaintiff then went back home and several letters passed between him and defendant by which it was made to appear that plaintiff had accepted the option and would come for the hogs on the 28th to the 30th of July. On July 12th plaintiff, by contract, resold the hogs purchased of defendant to one Thomas B. McPherson of Omaha, Nebraska, and by which he

had agreed to deliver them to McPherson on July 30, 1907. On July 29th plaintiff went to Saint Louis for the purpose of securing the hogs and being ready to comply with his contract with McPherson upon the next day. Defendant at that time informed the plaintiff that he could not have the hogs for the price mentioned in the option, to-wit: eighteen thousand five hundred dollars, and demanded a larger sum, and in response to this demand plaintiff finally agreed to pay him twenty thousand dollars, as he contends, for the purpose of securing possession of the hogs in order that he might comply with his contract with McPherson. He had brought with him drafts to the amount of eighteen thousand five hundred dollars preparatory to paying defendant as provided in the contract. When he could not secure the hogs at that price and was forced to pay twenty thousand dollars instead he gave to defendant his personal check for five hundred dollars, and a promissory note for one thousand dollars, due in thirty days. When this was done the defendant turned over to plaintiff the hogs, he turned them over to McPherson under his contract and went back home. The check and note were endorsed by defendant without recourse, but were not sold, but were, through his bank in St. Louis, collected at plaintiff's bank in Grand Rapids. They were both paid without protest upon the part of plaintiff, and the evidence is clear that at the time they were paid, defendant was still the owner of them, and there is no pretence on the part of plaintiff that he paid them by reason of the fact that they had been transferred and were in the hands of an innocent holder for value.

Counsel for appellant insist that the money was not paid under duress; while counsel for plaintiff insist that it was and that he is now entitled to recover it back. We are cited to a great many cases by opposing counsel in the effort to sustain their positions upon this question, all of which we have carefully examined,

and which it will not be necessary for us to review by reason of the fact that we think the case turns upon another question.

The evidence shows that the excess of fifteen hundred dollars demanded by defendant was not paid at the time the hogs were turned over to plaintiff, but on the contrary a check for five hundred dollars and a note for one thousand dollars, due in thirty days, was given by plaintiff to defendant. He then secured possession of the hogs, turned them over to McPherson under his contract with him, and so the matter rested until the check and the note were presented for payment. When they were presented for payment plaintiff paid them, and after having done so, brought this suit to recover back the amount he had thus paid. If we consider that the giving of the check and note was forced upon plaintiff by reason of his condition so that if he had not paid them he might have resisted their payment under a plea of duress, yet we must concede that at the time he did pay them the duress did not exist. The note was paid thirty days after the hogs were secured by plaintiff and after he had disposed of them. While a party may recover back money paid under such circumstances as constitute duress, yet it is also true that a contract secured by duress is not void but is voidable only and may be rendered valid by subsequent ratification, and this being true, a party may, after passing from under the influence which may have amounted to duress, ratify the same, and if he does ratify it by recognizing it as a valid contract, and he afterward treats it as a valid contract, he may, by his conduct, proclude himself from afterward avoiding it. [9 Cyc. 443; Ferrari v. The Board of Health (Fla.), 5 So. 1; Doolittle v. Chamberlain & McCullough, 7 Ohio State 299; Sornborger v. Sanford (Neb.), 52 N. W. 368.] We know of no way by which an acknowledgment of the validity of a contract would be made more certain or its ratification more effective than a payment, under its terms, of the

amount stipulated therein, and the plaintiff in this case, having paid his check and note after having secured possession of the hogs, did, by that act, acknowledge the genuineness of his obligation and ratified the terms by which the obligation had been given. This being true, it is immaterial what the circumstances were under which the check and note were given, and he is now precluded from asserting that they were given, under duress, and, therefore, he can have no cause of action against defendant by reason thereof. The judgment will be reversed. All concur.